# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TRATON NEWS, LLC, | : | Case No. 3:11-cv-435 |
| Plaintiff, | | Magistrate Judge Michael J. Newman (Consent Case) |
| -vs- | : | |
| TRATON CORP., *et al.*, | | |
| Defendants. | : | |

___

**ENTRY AND ORDER: (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS (DOCS. 25, 26); (2) DENYING AS MOOT ALL OTHER PENDING MOTIONS (DOCS. 23, 27, 28, 36, 38); (3) DIMISSING WITHOUT PREJUDICE PLAINTIFF'S INITIAL AND AMENDED COMPLAINTS; AND (4) TERMINATING THIS CASE**
___

This consent case involves claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and breach of contract claims. It is now before the Court on motions to dismiss filed by Defendants Traton Corp. and Traton Homes, LLC (collectively the "Traton Defendants") (doc. 25) and by Defendants Flammer Relations, Inc. and mRELEVANCE, LLC (collectively the "Vendor Defendants") (doc. 26). Plaintiff has filed responsive memoranda (docs. 32, 33); and Defendants have filed a reply memorandum (doc. 35). The Court heard oral arguments on these motions on May 21, 2012. *See* doc. 39.

### I. Background

To understand this case, it is necessary for the Court to briefly review the parties' backgrounds and the events leading up to this lawsuit. Traton Corp. was founded in 1971 by two brothers, William Poston and Millburn Poston. Declaration of William C. Poston (doc. 25-1) ¶ 2. The "Traton" name derives from the names of their children -- Millburn's daughter (Tracy) and

William's son (Clifton).  *Id.* ¶ 4.  Traton Corp. and its affiliated company, Traton Homes, LLC, are engaged in "various activities primarily devoted to residential community developmental and residential home construction in and around Atlanta, Georgia."  *Id.* ¶ 3.

The Traton Defendants have operated a website at www.tratonhomes.com since before 2005.  Declaration of Chris Poston (doc. 25-2) ¶ 3.  Through their website, the Traton Defendants "have publicly promoted their community development and homebuilding enterprise, and . . . specifically have kept realtors, potential customers, and residents of their communities apprised of relevant news and events concerning the operations of the Traton companies."  *Id.*

Plaintiff Traton News, LLC is an Ohio limited liability company ("Traton News (Ohio)"), which "is engaged in [the] business of publishing news stories and weblogs on the Internet."  Plaintiff's Amended Complaint (doc. 17) ¶ 2.  Sam Han is the incorporator and sole member of Traton News, LLC (Ohio).  *See* doc. 43-5.  It is also relevant to note that Sam Han is an attorney who represented Christopher Moses (an individual who had purchased a house from Traton Homes in May 2004) in a 2005 trespass lawsuit against Traton Corp. and its employee in Georgia state court.[1]  *See Moses v. Traton Corp.*, 650 S.E.2d 353 (Ga. Ct. App. 2007).

### A.  Plaintiff's Website (www.traton.com)

In Spring 2006, the Traton Defendants became aware of a website, www.traton.com, operated anonymously but using the name "Traton News."  Doc. 25-2 ¶ 13.  This website

---

[1] In that lawsuit, Moses claimed that Traton Corp. was liable to him for damage done when "construction vehicles drove over a portion of the grass near the curb in front of Moses's house, creating ruts and other damage to the turf and soil."  *Moses*, 650 S.E.2d at 354.  It was undisputed that the damaged land was entirely within a public right of way owned by the county, however.  *Id.*  Accordingly, the Georgia trial court granted the defendants' motion for summary judgment, finding Moses did not have standing to bring such an action because he did not have a protectable legal interest in the public right of way.  *Id.* at 354-57.  The Georgia Court of Appeals affirmed the trial court's ruling.  *Id.*

contains negative "news articles" and information about the Traton Defendants.[2]  The following headlines demonstrate the type of negative articles published there:  "Home Buyers Dissatisfied with Traton Homes' Failure to Resolve Title Issues"; "Ridiculous Warranty Issue Plagues Traton Homes Customer"; "Traton Homes Disrupts Yet Another Home Owner's Life"; "Traton Suspected of Felony"; "Procedures at Traton Homes [M]ay Deprive Real Estate Agents of Commission"; "Traton Homes Turns Up a Big Zero at the 2008 OBIE Awards"; "Traton Homes Ratings Sub-Standard for Three Consecutive Years"; "Traton Sucks and Taubman Sucks"; and "Traton Homes Covenants Worthless to Protect Homeowners."[3]  Doc. 2-5.  This is only a sample of the many negative articles.  *See id.*

### B. The Evolution of Traton News, LLC

In March 2006, Christopher Moses (the plaintiff in the Georgia lawsuit against Traton Corp.) created a Georgia limited liability company named "Traton News, LLC" ("Traton News (Georgia)").  Doc. 43-3 at PageID 1145.  On April 20, 2006, Traton News (Georgia) submitted an application to the United States Patent and Trademark Office ("USPTO") for registration of the trademark "TRATON" with respect to "news reporting services."  *See* doc. 43-2 at PageID 1139-44.  Traton News (Georgia) claimed it owned the TRATON mark, and first used it in connection with news reporting services on March 15, 2006.  *Id.*  Traton News (Georgia) was

---

[2] There does not appear to be a dispute that Plaintiff's website does, in fact, publish negative information about the Traton Defendants.  However, there is disagreement concerning the purpose of the website. The Traton Defendants claim the website "served (and still serves today) the singular purpose of publishing false and defamatory information about [Traton Corp. and related parties.]"  Doc. 25 at PageID 616.  On the other hand, Plaintiff denies that the website's purpose is to publish negative articles about the Traton Defendants.  *See* doc. 32 at PageID 808.  Plaintiff states, "The articles posted on the website include various news topics including chess, intellectual property, Traton Homes, other homebuilders in Atlanta, a meteor shower, Star Trek, and others."  *Id.*  Further, since 2008, Plaintiff claims, "the majority of articles have not been about Traton Homes."  *Id.*

[3] Plaintiff attached a screenshot of the website's homepage to its original Complaint displaying these headlines.  Doc. 2-5.

3

granted federal trademark registration for the TRATON mark with respect to "news reporting services" on February 13, 2007.  *Id.* at PageID 1126.   Moses voluntarily dissolved Traton News (Georgia) on January 15, 2008.  *See* doc. 43-3 at PageID 1152.

Moses subsequently moved from Georgia to Virginia.  *See* doc. 25-3 at PageID 704.   On September 10, 2007, Moses created a new Virginia limited liability company with the same name: Traton News, LLC ( "Traton News (Virginia)").  *See* doc. 43-4 at PageID 1154-59.   This entity was later cancelled in December 2008 due to its failure to pay the required fees.  *See id.*

In 2008, Sam Han moved to Ohio for a teaching position at the University of Dayton School of Law.  *See Han v. Univ. of Dayton*, Nos. 2012 CV 03406, 2011 CV 08966 (C.P. Ct. Montgomery Cnty., Ohio); doc. 43-8 at PageID 1187-1213.[4]  On April 5, 2011, Sam Han created Traton News (Ohio) – the Plaintiff in this case.  Doc. 45-3 at PageID 1160.

### C.  Flammer Relations and mRELEVANCE, LLC

At the end of 2007 and beginning of 2008, Traton Homes consulted with Defendant Flammer Relations, Inc., "an Atlanta-based public relations and social media firm focused on obtaining positive media coverage for clients throughout the Southeast United States," regarding the negative information being published on www.traton.com.  Declaration of Carol Flammer (doc. 26-1) ¶¶ 3-4.   Flammer Relations began periodically viewing the website in order to serve its client, Traton Homes.   *Id.* ¶¶ 4-5.

Flammer Relations is a part-owner of a separate and distinct company, Defendant mRELEVANCE, LLC. *Id.* ¶ 9.   In August 2010, Traton Homes entered into a contract with mRELEVANCE, LLC "to provide certain specific public relations services to assist in the creation

---

[4] Sam Han's teaching contract was not renewed.   Han has a lawsuit against the University of Dayton Law School currently pending in the Montgomery County, Ohio Common Pleas Court.   *See Han v. Univ. of Dayton*, Nos. 2012 CV 03406, 2011 CV 08966 (C.P. Ct. Montgomery Cnty., Ohio).

and maintenance of an internet blog site that would publicize positive news and events about Traton Homes, provide search engine optimization services for the blog posts, and provide related social media marketing services." *Id.* ¶ 8. The contract did not require mRELEVANCE to visit Plaintiff's website. *Id.* ¶ 9.

## II. Allegations in Plaintiff's Amended Complaint

According to Plaintiff's Amended Complaint (doc. 17), the following facts give rise to this lawsuit. Plaintiff claims it is the owner of the mark "TRATON" with respect to "news reporting services" – a mark that was registered with the USPTO in 2006. Doc. 17 ¶¶ 14-17. Further, Plaintiff claims it operates a website (www.traton.com) where it posts various news articles. *Id.* ¶ 19. According to Plaintiff, Dale Bercher, an officer of Traton Corp., accessed Plaintiff's website at least 175 times from June 9, 2008 through August 24, 2009, thereby binding the Traton Defendants to the website's terms and conditions. *Id.* ¶¶ 25-29. Plaintiff further alleges that the Traton Defendants accessed its website "no less than 125 times" between June 9, 2008 and February 2, 2011. *Id.* ¶ 31. Likewise, Defendant Flammer Relations, working on behalf of Defendant mRELEVANCE, reportedly accessed Plaintiff's website "no less than 31 times" from January 26, 2008 through October 29, 2010. *Id.* ¶¶ 38-43.

Additionally, Plaintiff claims that, in 2009, Traton Homes registered two domain names that are "identical or confusingly similar" to its registered TRATON mark for news reporting services: www.tratonnews.com and www.tratonnews.net. *Id.* ¶¶ 44-53. However, according to Plaintiff, Traton Homes has not used these domain names in any commercial or fair use. *Id.*

Further, Plaintiff alleges that, on August 26, 2010, Traton Homes started a weblog at www.tratonhomesblog.com, on which appears the word "TRATON" and a link for "News." *Id.* ¶¶ 54-57. Plaintiff claims that, during the three weeks leading up to the first blog post, the Traton

Defendants accessed Plaintiff's website at least forty times, and Flammer Relations accessed Plaintiff's website at least nine times. *Id.* ¶¶ 58, 60.  Plaintiff does not allege that mRELEVANCE ever visited www.traton.com. *See* doc. 17.

Plaintiff also alleges that "[s]omeone associated with the Traton Defendants" and other agents or employees of Defendants have used Plaintiff's domain address for email (*e.g.,* clif@traton.com) without permission and with knowledge that they did not have any rights to that domain address. *Id.* ¶¶ 66-68.  As a result, Plaintiff allegedly has received "countless spam and unwanted email messages that occupy valuable storage space, thereby causing harm to Traton News." *Id.* ¶ 67.

### A. Trademark Claims

Plaintiff brings four claims against Traton Homes under the Lanham Act.  First, Plaintiff asserts that Traton Homes, by registering two domain names (www.tratonnews.com and www.tratonnews.net) that are "confusingly similar" to its trademark, committed cyperpiracy in violation of 15 U.S.C. § 1125(d). *Id.* ¶¶ 69-76.  Second, Plaintiff claims Traton Homes' use of the TRATON mark in commerce has caused confusion and constitutes trademark infringement under 15 U.S.C. § 1114. *Id.* ¶¶ 78-83.  Plaintiff does not further specify how Traton Homes used the mark in commerce.  *See id.*  Third, Plaintiff claims Traton Homes' use of the TRATON mark in reference to a blog containing a "News" link constitutes "false designation of origin" that may cause confusion of being associated with Plaintiff in violation of 15 U.S.C. § 1125(a). *Id.* ¶¶ 85-88.  Fourth, Plaintiff alleges that Traton Homes' actions have constituted a false description of its trademark in violation of 15 U.S.C. § 1125(a). *Id.* ¶ 90.  Plaintiff claims that the "News" section on Traton Homes' website (which reports news and events concerning the operation of Traton companies) misrepresents "the nature, characteristics, quality or a combination thereof" a

news reporting service. *Id.* ¶ 95.

## B. Breach of Contract Claims

Plaintiff also brings three breach of contract claims: one against the Traton Defendants; one against Flammer Relations; and one against mRELEVANCE. According to Plaintiff, the homepage of its website (www.traton.com) prominently displays "Terms and Conditions," and Defendants agreed to these Terms and Conditions by repeatedly accessing the website. *Id.* ¶¶ 20, 27, 34, 39, 42, 59, 61. Plaintiff asserts that Defendants violated (1) Paragraph Two providing that "none of these materials may be used for the benefit of Traton Corp. (Marietta, Georgia) and/or its affiliates for any reason whatsoever without the express written consent of the Operators," *id.* ¶¶ 63-65, 100-02; and (2) Paragraph Six providing that users agree "not to use any robot, spider, other automatic device, or manual process to monitor or copy our Web pages or the content contained herein." *Id.* ¶¶ 99-101.

### III. Personal Jurisdiction

As all Defendants raise a lack-of-personal-jurisdiction defense pursuant to Fed. R. Civ. P. 12(b)(2),[5] *see* doc. 25 at PageID 618-23; doc. 26 at PageID 737-43, the Court must first determine whether it has jurisdiction over all Defendants. *Bird v. Parsons*, 289 F.3d 865, 872-73 (6th Cir. 2002). In deciding whether personal jurisdiction exists, the Court keeps the following principles in mind. Plaintiff bears the burden of establishing the existence of jurisdiction. *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989). In this case, where no discovery or evidentiary hearing was conducted, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen v. Matthews,* 935 F.2d 1454,

---

[5] All Defendants are represented by the same attorney. Therefore, the personal jurisdiction arguments mirror each other in the two respective motions to dismiss. *See* doc. 25 at PageID 618-23; doc. 26 at PageID 737-43.

7

1458 (6th Cir.1991). However, Plaintiff may not rest on its pleadings, and must submit specific evidence supporting jurisdiction. *Id.* The Court must view the pleadings and affidavits in a light most favorable to Plaintiff, and should not weigh "the controverting assertions of the party seeking dismissal." *Id.* at 1459.

In its Amended Complaint, Plaintiff asserts the Court has personal jurisdiction over Defendants because they "conceded to personal jurisdiction in this district," either directly or through an agent, by agreeing to a forum selection clause in the terms and conditions posted on www.traton.com.[6] Doc. 17 ¶¶ 8-10. A party that validly consents to the jurisdiction of a particular court in a forum selection clause waives his or her lack-of-personal-jurisdiction defense. *See Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). A freely negotiated forum selection clause must be enforced "absent a strong showing that it should be set aside." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). In determining the enforceability of a clause, a court should consider the following factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.*

As an initial matter, the Court notes that it has federal question jurisdiction over this case based on Plaintiff's federal Lanham Act claims against Traton Homes only. (Plaintiff does not bring federal claims against Traton Corp. or the Vendor Defendants.) Thus, if the Court decides it lacks jurisdiction over Traton Homes to hear those federal claims (as it does in fact conclude, *see infra*), it is within the Court's discretion whether to proceed on the remaining state law claims

---

[6] Alternatively, the Amended Complaint states that personal jurisdiction is proper over Defendants under Ohio's long-arm statute, Ohio Revised Code § 2307.382(A)(6). *See* doc. 17 ¶ 11. However, as discussed *infra*, Plaintiff has failed to show that Traton Homes has sufficient contacts with Ohio to comport with due process requirements. *See infra* note 11.

against the other three Defendants, and in a case such as this in its early proceedings, the Court finds it would be inappropriate to do so.  *See U.S. Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well"); *see also* 28 U.S.C. § 1367(c)(3).

For the following reasons, the Court finds that it does not have personal jurisdiction over Traton Homes.  First, contrary to Plaintiff's assertions, the forum selection clause is unenforceable against Traton Homes.  Second, Plaintiff has failed to show that Traton Homes has sufficient contacts with the State of Ohio to meet due process standards.  Therefore, because it would be improper to exercise supplemental jurisdiction over the remaining state law claims, the Court dismisses all of Plaintiff's claims.

### A. The Forum Selection Clause

The Court first finds that Plaintiff's federal Lanham Act claims fall outside the limited scope of the forum selection clause, which states, "You hereby consent to the exclusive jurisdiction and venue of courts in or nearest to the United States District Court for the Southern District of Ohio, Western Division, *in all disputes arising out or relating to the use of this Web site*."  *See* doc. 2-5 at PageID 137, ¶ 16 (emphasis added).  Principles of contract interpretation apply in determining the scope of a forum selection clause.  *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892-93 (6th Cir. 1990).  The Court must "examine the substance of [Plaintiff's] claims as they relate to the precise language" of the forum selection clause.  *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007).  The relevant language in the forum selection clause at issue here is: "all disputes arising out of or relating to the use of this Web site."  To "arise out of" means "to originate from a specified source."  *Id.* at 389 (quoting *Webster's Third New International Dictionary* 117 (1981)).  To "relate to" means "[t]o stand in some relation; to have bearing or

9

concern; to pertain; refer; to bring into association with or connection with." *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 n. 16 (1983) (citing *Black's Law Dictionary* 1158 (5th ed. 1979)).

Plaintiff's Lanham Act claims – for "cyberpiracy," trademark infringement, false designation and false description – arise from alleged activities that are wholly separate and distinct from Traton Homes' use of Plaintiff's website. These claims do not "arise out of or relate to" Traton Homes accessing www.traton.com. Indeed, in the Amended Complaint, the factual allegations supporting these Counts do not even mention www.traton.com. *See* doc. 17 at PageID 550-53. Rather, the alleged unlawful actions in Counts One through Four are: Traton Homes registered domain names similar to www.traton.com; and Traton Homes used the TRATON mark on *its* (not Plaintiff's) website.[7] *See id.* Accordingly, the forum selection clause is unenforceable as to Plaintiff's Lanham Act claims.[8] *Cf. Alticor, Inc. v. Nat'l Union Fire Ins. Co.*, 411 F.3d 669, 673 (6th Cir. 2005) (finding an arbitration clause – that was limited to a specific agreement – to be narrow and excluding claims not arising out of that specific agreement); *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc., v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 90-91 (2d Cir. 2009) (determining that the plaintiff's trademark infringement claims were not subject to a forum selection clause in licensing agreements); *Phillips*, 494 F.3d at 390-92 (holding that the plaintiff's federal copyright claims were not governed by the forum selection clause in the parties' recording contract); *Bradford Co. v. Afco Mfg.*, 560 F. Supp. 2d 612, 621-22 (S.D. Ohio 2008), *vacated on*

---

[7] Plaintiff's attempt to convince the Court otherwise, *i.e.,* its "marketing strategy" argument, is tenuous and unpersuasive. *See* doc. 32 at PageID 817-18.

[8] The Court finds that determining the scope of a forum selection clause is similar to determining the scope of an arbitration clause. The Sixth Circuit has a well-established test for deciding whether a claim falls under an arbitration clause: Could the action could "be maintained without reference to the contract or relationship at issue? If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). Applying that test to this case, Plaintiff's Lanham Act claims are outside the scope of the forum selection clause; the Court would not need to reference the Terms and Conditions on Plaintiff's website in order to resolve Plaintiff's trademark claims.

*other grounds by Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262 (Fed. Cir. 2010) (determining that a forum selection clause did not apply to a cause of action that did not arise out of the applicable contract); *Gen. Envtl. Sci. Corp. v. Horsfall*, 753 F. Supp 664, 667-68 (N.D. Ohio 1990), *aff'd in part, rev'd in part by Gen. Envtl. Sci. Corp. v. Horsfall*, Nos. 92-4110 - 14, 1994 U.S. App. LEXIS 13398 (6th Cir. May 25, 1994) (finding a forum selection clause did not apply to RICO claims because they did not arise directly from the contract in which the clause appeared).[9]

Alternatively, the Court finds that Traton Homes is not bound by the forum selection clause because no contract was formed between Plaintiff and Defendants. The enforceability of this type of internet agreement (a browsewrap agreement) is an issue of first impression in this Court.[10] The Court recognizes that there are non-binding cases holding that a browsewrap agreement is enforceable against a website visitor who had constructive notice of a website's terms and conditions (usually because they were prominently displayed), and repeatedly accesses that

---

[9] Because the forum selection clause does not encompass Plaintiff's Lanham Act claims, Traton Homes (a Georgia entity that does not conduct business in Ohio) did not consent to being sued in this Court with respect to those claims. Even assuming, *arguendo*, that the forum selection clause is valid and enforceable and applies to Plaintiff's breach of contract claim against Traton Homes, it would be inappropriate to exercise pendent personal jurisdiction over Plaintiff's federal Lanham Act claims given the very early stage of this lawsuit. *See United States v. Botefuhr*, 309 F.3d 1263, 1273-74 (10th Cir. 2002) (declining to exercise pendent personal jurisdiction and explaining that a district court should normally dismiss state law claims after federal law claims are dismissed, particularly in the early stages of the lawsuit).

[10] There are two general types of Internet agreements: clickwrap and browsewrap. A clickwrap agreement is formed when the website visitor is required to explicitly manifest assent to the website's terms and conditions by requiring some affirmative act (*e.g.,* clicking "I agree" or entering one's initials) before the visitor can proceed further on the website. *See Snap-on Bus. Solutions*, 708 F. Supp. 2d at 681. A website user's assent is manifested when he or she clicks "I agree" to a proper clickwrap agreement. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 33-34 (2d Cir. 2002). This case, however, involves a browsewrap agreement, which may be formed simply by the website visitor's use of the website and does not require any explicit manifestation of assent before the using the website. *See Snap-on*, 708 F. Supp. 2d at 681-83; *Sw. Airlines Co. v. Boardfirst, LLC*, No. 3:06-cv-0891-B, 2007 WL 4823761, at *4-7, 2007 U.S. Dist. LEXIS 96230, at *11-21 (N.D. Tex. Sept. 12, 2007). The law regarding manifestation of assent to browsewrap agreements is less clear. *See supra.* The determinative issue is whether the website user had actual or constructive knowledge of the terms and conditions prior to using the website. *See supra; see also Specht*, 306 F.3d at 30-32, 35.

website. *See, e.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 401-03 (2d Cir. 2004); *Snap-on Bus. Solutions, Inc. v. O'Neil & Assocs., Inc.*, 708 F. Supp. 2d 669, 681-83 (N.D. Ohio 2010); *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 U.S. Dist. LEXIS 8450, at *11-14, 2005 WL 756610, at *4-5 (N.D. Cal. Apr. 1, 2005).

However, the Court finds that there is a crucial difference between the above-cited cases and this case. In those cases, the website visitor obtained a benefit from using the website at issue. *See Register*, 356 F.3d at 396-97 (obtaining data from the website and using that information to send marketing solicitations); *Snap-on*, 708 F. Supp. 2d at 671-75 (copying and using information from the website as a service to its customer); *Cairo*, 2005 U.S. Dist. LEXIS 8450, at *7-9, 2005 WL 756610, at *1-3 (copying promotional materials from the website and posting a version of those materials on its own website). In contrast here, Traton Homes did not receive a benefit from Plaintiff by accessing its website. Rather, it visited the website in order to view what negative material was being posted about its company in order to protect its reputation.

In determining whether a valid agreement was formed, the Court examines traditional contract principles. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000). A valid contract must be supported by consideration. *Konica Minolta Bus. Solutions, U.S.A. v. Allied Office Prods.*, 724 F. Supp. 2d 861, 874 (S.D. Ohio 2010). "Consideration is '[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee.'" *Toumany Sayon Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x 514, 517 (6th Cir. 2008) (quoting *Black's Law Dictionary* (8th ed. 2004)). Under the unique factual circumstances of this case, the Court finds there is no consideration (*i.e.*, a bargained-for legal benefit or detriment) to support a contract between Plaintiff and Traton Homes. Traton Homes did not gain any benefit (nor forbear from an act) in exchange for visiting Plaintiff's

website. Rather, in the Court's view, Traton Homes was induced into monitoring Plaintiff's website to defend itself.

Therefore, the Court finds that the forum selection is unenforceable against Traton Homes. Plaintiff's assertion – that Traton Homes "conceded to personal jurisdiction in this district" by agreeing to a forum selection clause in the terms and conditions posted on www.traton.com – is unavailing. Doc. 17 ¶¶ 8-10. In order for this case to proceed against Traton Homes, Plaintiff must demonstrate that jurisdiction over Traton Homes is proper under the traditional personal jurisdiction analysis. As discussed below, the Court finds that Plaintiff has failed to do so.

### B. Traditional Personal Jurisdiction Analysis

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" *Bird*, 289 F.3d at 871 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Although Ohio's long-arm statute is "not coterminous with federal constitutional limits," the Sixth Circuit nevertheless "focuse[s] on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'"[11] *Id.* at 871-72.

---

[11] Plaintiff asserts that personal jurisdiction is proper under Ohio's long-arm statute, Ohio Revised Code § 2307.382(A)(6), *see* doc. 17 ¶ 11, which states that "a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Plaintiff does not explain how Defendants' conduct falls under this section of the Ohio's long-arm statute. *See* doc. 32 at PageID 814-15; doc. 33 at PageID 836. Nonetheless, the Court, finding the due process prong has not been satisfied, need not address that issue.

There are two types of personal jurisdiction depending upon the nature of the defendant's contacts with the forum state: general and specific. *Id.* at 873. The Court has general jurisdiction when "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (quoting *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Without citing to any authority, Plaintiff asserts that general jurisdiction over Defendants is established based on "the hundreds of visits to Traton News' Ohio-based website and the hundreds of clicks through to Traton News' articles." Doc. 32 at PageID 815; doc. 33 at PageID 836. This argument is unpersuasive. *See Bird*, 289 F.3d at 873-74 (holding that maintaining a website and allowing Ohio residents to register domain names was insufficient to establish general jurisdiction over the non-resident defendant).

Moreover, the Court finds that specific jurisdiction – which occurs when the lawsuit "'aris[es] out of or relate[s] to the defendant's contacts with the forum'" – has not been established either. *See id.* at 874 (quoting *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). "[T]he crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit employs a three-part test to determine whether specific personal jurisdiction over a defendant is proper:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

14

*Bird*, 289 F.3d at 874.

Here, the Court finds that it lacks personal jurisdiction over Traton Homes because it did not purposefully avail itself of doing business in Ohio. Indeed, Plaintiff does not seriously contest this issue. In its memorandum in opposition to Traton Homes' dismissal motion, Plaintiff summarily states there is personal jurisdiction because "transacting business is ample basis for exercising long-arm jurisdiction" and "[h]ere, the situs of the contract is Ohio." Doc. 32 at PageID 814-15. Plaintiff further asserts, "Specific jurisdiction is established, since the very actions which Defendants directed into this forum give rise to the jurisdiction for breach of contract." *Id.* Plaintiff does not allege any additional facts indicating that Traton Homes has any contacts with Ohio other than visiting Plaintiff's Ohio-based website. *See id.* Indeed, at oral argument, Plaintiff did not rebut Defendants' counsel statement that there were insufficient contacts to exercise jurisdiction over Defendants. *See* doc. 39 at PageID 1035-36, 1050-70.

Moreover, Plaintiff does not cite to any caselaw supporting its proposition – that visiting its Ohio-based website establishes personal jurisdiction. *See* doc. 32 at PageID 814-15. To the contrary, the Court finds that the mere act of using Plaintiff's website is insufficient to confer jurisdiction over Traton Homes, regardless of how many times the website was visited. "It is the 'quality' of [the] contacts, not their number or their status . . . that determines whether they constitute purposeful availment." *Reynolds v. Int'l Amateur Ath. Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994). *Cf. Neogen Corp v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) ("The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is . . . an 'attenuated' contact that falls short of purposeful availment."); *Griepentrog*, 954 F.2d at 1177 (finding that sending letters and making telephone calls to the forum state did not establish personal jurisdiction); *Martin v. Dobson*, No. 3:09-cv-208, 2010 U.S. Dist. LEXIS

15

16607, at *3-9, 2010 WL 723680, at *2-3 (S.D. Ohio Feb. 5, 2010) (finding that the defendant's posting on a website about the plaintiff did not establish specific personal jurisdiction).

Therefore, the Court lacks personal jurisdiction over Defendant Traton Homes to hear the trademark and breach of contract claims against it.  Without those federal claims pending, the Court lacks original subject matter jurisdiction over this case.[12]  Thus, in order for this case to proceed, the Court would have to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367.  As noted above, it would be improper to do so given that the discovery process has not even begun.   (The Court issued an Order staying discovery pending the resolution of these motions to dismiss.  *See* doc. 16.)  *See* 28 U.S.C. § 1367(c)(3); *Gibbs*, 383 U.S. at 726; *Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 533, 538-39 (6th Cir. 2010) ("When all the federal claims in a case have been dismissed, there is a strong presumption in favor of dismissing any remaining state law claims unless the plaintiff can establish an alternate basis for federal jurisdiction"); *cf. Hooks v. Hooks*, 771 F.2d 935, 945 (6th Cir. 1985) (affirming the district court's dismissal of the state law claims upon dismissal of the federal law claims).

Accordingly, the Court **ORDERS** as follows:

1. Defendants' motions to dismiss (docs. 25, 26) are **GRANTED**;

2. All other pending motions (docs. 23, 27, 28, 36, 38) are **DENIED AS MOOT**;

3. Plaintiff's initial and amended complaints are **DISMISSED WITHOUT PREJUIDCE**; and

4. This case is **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

August 28, 2012                                                      s/ **Michael J. Newman**
                                                                       United States Magistrate Judge

---

[12] Plaintiff has not alleged diversity jurisdiction.   Nor does it appear to apply in this case because while the parties may be diverse, Plaintiff has not alleged damages of $75,000 or more.   *See* 28 U.S.C. § 1332; *see also* doc. 17.